Kinkade, J.
 

 This is an action to marshal liens on realty, and to settle the priorities of the liens. Originally the.action was by a judgment creditor, having a judgment against one of the owners of the real estate. Numerous lien-holders became parties
 
 *344
 
 to that action. A receiver was appointed, who took possession of the property and sold the same free from lien claims, under and pursuant to an order of court, all of the rights of the lien claimants being transferred to the fund received by the receiver at the sale of the property.
 

 By agreement the right of jury trial was waived and the case submitted to the common pleas court, from which court the case was carried on error to the Court of Appeals. Many of those who were parties to the action in the trial court omitted to prosecute error to the Court of Appeals, and we are only concerned here with the rights of the parties who still remain in the action.
 

 Generally speaking, there are two classes of lien claimants — holders of mechanics ’ liens and mortgage liens. The contest as to priority is between these two classes. It is conceded that there is not more money in the fund than will pay one of the two classes of claimants, and therefore, when one side succeeds, there will be nothing remaining to apply on the claims and liens of the other class.
 

 The Moraine Development Company, hereinafter referred to as the owner, owned a tract of unimproved real estate in Montgomery county, not far from the city of Dayton, that had been platted into city lots. The owner desired to sell these lots and developed the plan of selling a portion of the lots to a builder, who would build residences on the respective lots purchased. The owner entered into a verbal contract with one "W. C. Arnold, who was a .contractor and builder, and, pursuant to that contract, Arnold purchased at agreed upon prices several of the lots. He was given immediate possession
 
 *345
 
 of these lots, and this is an important fact to keep in mind, which possession was maintained continuously by Arnold and his relatives and agents until the receiver took possession.
 

 The verbal contract between Arnold and the owner provides that Arnold should forthwith begin the construction of a residence on each of the lots he had so purchased, and the contract stipulated that, after he had paid to the owner the agreed upon percentage of the purchase price of the lots respectively, the owner would then convey the title to these lots to Arnold and accept back from Arnold, as security for the remainder of the purchase price, a second mortgage upon the lots, it being contemplated between them at the time of entering into the verbal contract that Arnold would procure a loan upon the property as a means of going forward with the contemplated improvements thereon, and that this loan would be secured by a first mortgage upon the property.
 

 Pursuant to this understanding, Arnold immediately began the construction of a residence upon each of the lots so purchased, and in doing this he secured building materials from various parties, which he did not pay for in full, and these are the mechanics’ lien claimants now pressing their rights in this action.
 

 When Arnold had proceeded with his improvement of the property to a given point, he then sought to procure a loan that was to be secured by a first mortgage on the property. At that time he had already encountered certain financial difficulties that rendered it unwise for him to take the title to the property in his own name, and therefore he decided
 
 *346
 
 to take the title in the name of his mother, Mary E. Arnold, and his brother, Russell Arnold; and he caused the application for the loan to be made by them to the Mutual Home & Savings Association, hereinafter mentioned as the loan company. The loan company made a full examination of the title to the property and approved the loan. The record shows that as a part of this examination by the loan company they caused an inspection of the property to be made on the ground, which disclosed to the loan company the fact that residences were then being built on the several lots that Arnold had purchased of the owner. Prior to this time Arnold had been purchasing building materials in his own name, under the name of W. C. Arnold & Co., and under the name of the Moraine Lumber Company, and other names as well.
 

 It is fairly inferable from the record that for some reason of his own Arnold did not desire to have the people from whom he was purchasing building supplies know exactly who held the legal title to the property at any given time.
 

 The common pleas court found that this shifting of the title from one party to another on the part of Arnold was the result of a conspiracy between himself and his friends and relatives to deceive others with whom he was dealing as to the real owners of the properties, and made the further finding that, no matter in whose name these respective properties chanced to be at different times, they were all at all times under the control of Arnold himself, and were being manipulated by him in furtherance of his own purposes. There is evidence in the record upon
 
 *347
 
 •which the trial court might have based these findings.
 

 The trial court sustained the mechanics ’ liens and entered judgment in favor of those lienholders. Error was prosecuted to the Court of Appeals by the defendant in error here, the loan company. The Court of Appeals found that there was error in the finding and judgment of the court of common pleas in favor of the mechanics’ liens, and for that reason reversed the judgment of the court of common pleas, and remanded the case to that court, with instructions to enter a judgment of distribution of the funds in the hands of the court to the mortgage lien claimant, defendant in error here. The journal entry showing the action of the Court of Appeals is as follows:
 

 “This day this cause came on for hearing on the petition in error of The Mutual Home and Savings Association, and was submitted to the court on oral argument and briefs of counsel.
 

 “On consideration thereof, the court finds that there is error in the finding and judgment of the court below wherein the said court found and adjudged the mechanics’ liens of the defendants in error herein to be superior and prior in right to the mortgage liens of The Mutual Home and Savings Association, and wherein it ordered the distribution of the funds realized from the sale of the properties to which said liens theretofore had attached, in accordance with said findings and judgment, all in favor of the defendants in error here, and against the plaintiff in error here.
 

 “The court further finds that in each and every instance, the mortgage liens of the plaintiff in error
 
 *348
 
 are superior and prior in right to the mechanics’ liens of the defendants in error.
 

 “It is therefore ordered that the judgment of the Court of Common Pleas of Montgomery county, Ohio, making distribution of the funds derived from the sale of the properties involved in the controversy herein, which said funds have been deposited with the clerk of the Common Pleas Court of Montgomery county, Ohio, be and the same hereby is reversed, vacated, set aside and held for naught, and it is further ordered, adjudged and decreed that a mandate issue to the said Court of Common Pleas, directing it to make distribution of said funds in accordance with this judgment and order of the court, as follows * *
 

 It will be observed that the Court of Appeals simply makes the general finding that there is' error in the action of the trial court in the judgment that it rendered, and therefore that judgment is reversed and the cause remanded to the trial court, with instructions to enter a judgment, distributing the fund to the defendant in error, the loan company.
 

 When it is not possible for the Court of Appeals to unanimously find that the judgment of the trial court was not sustained by sufficient evidence, or that it was manifestly against the weight of the evidence, and no grounds of reversal appear in the record, it follows that the judgment of the Court of Appeals must be reversed, and the cause remanded to that court, that it may correct its judgment journal entry by stating therein the grounds upon which the judgment of the trial court was reversed. The
 
 *349
 
 provisions of Sections 12248 and 12273, General Code, are mandatory.
 

 Judgment reversed and ccmse remanded.
 

 Marshall, C. J., Matthias, Day, Allen and Robinson, JJ., concur.
 

 J ones, J., not participating.